UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| TRENT WILLIAM FAY, | ) |
| Petitioner, | ) ) ) |
| vs. | ) Case No. 15-0266-CV-W-HFS-P ) |
| JAMES HURLEY, | ) ) |
| Respondent. | ) |

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING THE ISSUANCE OF A CERTIFICATE OF APPEALABILITY

Petitioner, Trent Fay, filed this pro se habeas corpus petition pursuant to 28 U.S.C. § 2254 on April 3rd, 2015, seeking to challenge his 2010 conviction and sentence for drug trafficking in the first degree, which was entered in the Circuit Court of Sullivan County, Missouri.

Petitioner raises five (5) grounds for relief: (1) that trial counsel was ineffective for failing to investigate the scene of the crime; (2) that trial counsel was ineffective for failing to object, and, instead, stipulating to the admission of a lab report; (3) that trial counsel was ineffective for failing to investigate lack of jurisdiction; (4) that trial counsel was ineffective for failing to call petitioner as a witness at the suppression hearing and at trial; and (5) that trial counsel was ineffective for failing to present evidence and cross examine co-defendants. Respondent contends that Ground 2 is without merit and that Grounds 1, 3, 4, and 5 are procedurally barred.

## FACTUAL BACKGROUND

On direct appeal, the Missouri Court of Appeals, Western District, summarized the facts of the case:

> On April 10, 2009, Detective Bobby Calvert of the North Missouri Drug Task Force received information that methamphetamine was being manufactured at Jeffrey Sheffer's residence in Rothville, Missouri, in Chariton County. After

receiving the tip, Detective Calvert decided to drive by the Sheffer home around 10:00 p.m. to observe any unusual or suspicious circumstances. As he drove by the residence, he smelled a strong chemical odor of what he believed to be ether. Based on his training and experience, he knew that ether is commonly associated with the manufacturing of methamphetamine. Detective Calvert contacted Deputy Randall Hershey, a deputy with the Chariton County Sheriff's Department, who also drove by the Sheffer home. Deputy Hershey also detected the strong smell of ether emanating from the residence. Detective Calvert contacted his supervisor, Captain Chris Brown, and the Chariton County Sheriff, Chris Hughes, to ask for assistance from other officers and state highway patrol troopers in order to be able to conduct a "knock-and-talk." The officers proceeded to the residence in order to attempt to make contact with the occupants of the home.

Upon arrival at the Sheffer home, the officers parked their vehicles and began walking toward the residence. There was a sign on the front door of the home which clearly stated, "*Please use back doors*." In the back and to the side of the house, there was a garage-type shed, which was clearly visible from the street. The shed had a garage door facing the roadway and an unpaved driveway leading up to it. The shed was observable from the street. Trooper Skaggs testified that the ether smell was so strong that it could be detected "hundreds of yards" from the residence. As he approached the back yard and looked at the shed, Skaggs observed a white male looking directly at him from a window. Having a concern for safety, Skaggs ordered the man to "show his hands." Instead of complying, the man ducked out of sight and shut off the lights in the shed. As Detective Calvert walked around the side of the house, he heard Trooper Skaggs yelling that someone was in the shed. The smell of ether was so strong near the shed that it caused the officers' eyes to water and noses to run.

Based on their training, the officers were acutely aware of the public safety hazards and the risk of a possible explosion posed by the apparent drug manufacturing activity. Detective Calvert approached the shed, opened the door, and entered to secure the interior of the dark shed. Officers casting flashlights into the shed observed a fog-like haze. Calvert saw one person (Jeffrey Sheffer) hiding under a workbench and another (Fay) hiding under a car. Both men were removed from the shed and placed in wrist restraints. The shed was secured and the officers exited. After being advised of his *Miranda* warnings, Fay admitted to the officers that he was manufacturing methamphetamine in the shed. He said he had just finished "cooking" a batch of methamphetamine.

Detective Calvert and Sheriff Chris Hughes went to obtain a search warrant. After completing an affidavit, which was sworn to and signed before a notary, Calvert and Tracy Carlson, the prosecuting attorney for Linn County, both signed the application for the search warrant. Calvert then took the documents to the Circuit Judge of the Ninth Circuit, Hon. Gary Ravens, who issued the search warrant. Thereafter, the officers returned to the Sheffer residence and executed the

> search warrant. Upon executing the warrant, officers seized numerous items from the shed, including methamphetamine and drug-related paraphernalia.
>
> Crime lab testing performed on the seized substances confirmed the presence of methamphetamine. Fay was subsequently charged in Chariton County, as a prior and persistent offender, with one count of committing the class A felony of first-degree drug trafficking, in violation of section 195.222.8(2), RSMo Cum. Supp. 2011.
>
> Before trial, Fay filed a motion to suppress testimony and evidence concerning the items seized during the search of the shed. After an evidentiary hearing, the trial court denied the motion to suppress. Following a bench trial, Fay was convicted of first-degree drug trafficking and sentenced to fifteen years' imprisonment. Fay appeals, challenging the admission of the evidence obtained during the search.

Respondent's Exhibit E, pp. 2-4 (internal footnotes omitted).

Before the state court findings may be set aside, a federal court must conclude that the state court's findings of fact lack even fair support in the record. Marshall v. Lonberger, 459 U.S. 422, 432 (1983). Credibility determinations are left for the state court to decide. Graham v. Solem, 728 F.2d 1533, 1540 (8th Cir. en banc), cert. denied, 469 U.S. 842 (1984). It is petitioner's burden to establish by clear and convincing evidence that the state court findings are erroneous. 28 U.S.C. § 2254(e)(1).[1] Because the state court's findings of fact have fair support in the record and because petitioner has failed to establish by clear and convincing evidence that the state court findings are erroneous, the Court defers to and adopts those factual conclusions.

## GROUND 2 – FAILING TO OBJECT TO LAB REPORT

In Ground 2, petitioner contends that his trial counsel was ineffective for failing to object and, instead, stipulating to the admission of a lab report that was used to establish the weight of

---

[1]In a proceeding instituted by an application for writ of habeas corpus by a person in custody pursuant to a judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

the methamphetamine at trial. Petitioner contends that because trial counsel stipulated to the admission of the lab report, petitioner was unable to confront the lab technician who prepared the report and challenge the report's findings. Petitioner contends that if he were able to challenge the findings of the report, then a reasonable probability exists that the outcome of the trial would have been different.

In order for petitioner to successfully assert a claim for ineffective assistance of counsel, petitioner must demonstrate that his attorney's performance "fell below an objective standard of reasonableness" and that "the deficient performance" actually prejudiced him. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). This Court may not grant habeas relief unless the state appellate court's decision "was contrary to, or an unreasonable application of, the standard articulated by the [United States] Supreme Court in Strickland." Owens v. Dormire, 198 F.3d 679, 681 (8th Cir. 1999), *cert. denied*, 530 U.S. 1265 (2000).

"A court considering a claim of ineffective assistance of counsel must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 131 S. Ct. 770, 787 (2011) (quoting Strickland, 466 U.S. at 689). Petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687.

The Missouri Court of Appeals, Western District, found that the motion court's judgment was supported by the record:

> In his sole point, Appellant contends that the motion court erred in denying his Rule 29.15 motion because Trial Counsel provided ineffective assistance of counsel by failing to object and, instead, stipulating to the admission of the lab report into evidence. To establish ineffective assistance of trial counsel, "a movant must show that counsel's performance did not conform to the degree of skill, care, and diligence of a reasonably competent attorney and that movant was

thereby prejudiced." Williams, 386 S.W.3d at 752 (internal quotation omitted). A movant must prove "both the performance and prejudice prongs of this test in order to prevail on a claim of ineffective assistance, and if he fails to satisfy either prong, we need not consider the other." Blair, 402 S.W.3d at 135 (internal quotation omitted).

To satisfy the performance prong, a movant "must point to specific acts or omissions of counsel that, in light of all circumstances, fell outside the wide range of professional competent assistance." McLaughlin v. State, 378 S.W.3d 328, 337 (Mo. banc 2012) (internal quotation omitted). There is a strong presumption "that counsel acted professionally in making decisions and that any challenged action was part of counsel's sound trial strategy." Williams, 386 S.W.3d at 752 (internal quotation omitted).

"To demonstrate prejudice, a movant must show that, but for counsel's poor performance, there is a reasonable probability that the outcome of the court proceeding would have been different." Id. (internal quotation omitted). A reasonable probability is "a probability sufficient to undermine confidence in the outcome." McLaughlin, 378 S.W.3d at 337 (internal quotation omitted).

Appellant contends that Trial Counsel was ineffective for stipulating to the admission of the lab report because, by doing so, Appellant was denied his right to confront the lab technician who prepared the report and, therefore, was denied the opportunity to challenge the technician's findings. Appellant avers that, had Trial Counsel not stipulated to the lab report and the lab technician testified, a reasonable probability exists that the outcome of the trial would have been different.

We recognize that "laboratory reports prepared solely for the purpose of use against the accused in a criminal trial to prove an element of a crime charged are testimonial and subject to the Confrontation Clause restrictions." Littleton v. State, 372 S.W.3d 926, 930 (Mo. App. E.D. 2012). However, a defendant can waive his or her Sixth Amendment right to confront the witnesses against him or her by stipulating to the admission of testimonial evidence. United States v. Robinson, 617 F.3d 984, 989 (8th Cir. 2010). Thus, by stipulating to the lab report's admission, Appellant waived his right to confront the lab technician at trial.

Although Appellant contends and testified that he did not agree with Trial Counsel's decision to stipulate to the lab report's admission, the motion court found that it did not believe Appellant's testimony at the evidentiary hearing. Additionally, to the extent Appellant avers the stipulation constituted unreasonable trial strategy, the motion court determined that Trial Counsel had no reasonable objection to the lab report and, instead, reasonably focused upon preserving the suppression issues at trial. The record supports the motion court's findings and conclusions.

"Counsel's decision not to call a witness is presumptively a matter of trial strategy and will not support a claim of ineffectiveness unless the movant clearly establishes otherwise." Moore v. State, 431 S.W.3d 15, 19 (Mo. App. E.D. 2014). Likewise, "[i]f a failure to object is based on reasonable trial strategy, then no ineffective assistance of counsel can be shown." Johnson v. State, 330 S.W.3d 132, 139 (Mo. App. W.D. 2010) (internal quotation omitted). "Provided the decision is reasonable, a deliberate and informed choice to pursue one defense over another is a matter of trial strategy that cannot form the basis of a claim of ineffective assistance of counsel." Moore v. State, 431 S.W.3d 15, 20 (Mo. App. E.D. 2014) (internal quotation omitted). "The question in an ineffective assistance claim is not whether counsel could have or even, perhaps, should have made a different decision, but rather whether the decision made was reasonable under all the circumstances." Moore, 431 S.W.3d at 21 (internal quotation omitted).

Appellant testified that he wanted to challenge the lab report on the basis that the reported amount of methamphetamine was too great given the products seized from the shed. However, Trial Counsel testified that she explained to Appellant "many times" how the weight of the drug was determined under § 195.222. She further testified that, even by Appellant's calculations, the amount of methamphetamine was still sufficient for a first-degree felony trafficking charge. Thus, Trial Counsel believed she could not sufficiently challenge the lab report to warrant testimony from the lab technician. Rather, Trial Counsel made a strategic decision to focus on preserving the suppression issues for appeal, which she successfully did. Under such circumstances, we cannot say Trial Counsel's strategy was unreasonable.

Moreover, Appellant has failed to establish that by objecting to the admission of the lab report and having the lab technician testify, there is a reasonable probability that the outcome of the trial would have been different. As noted by the motion court, there was overwhelming evidence of Appellant's guilt. "Where there is overwhelming evidence of guilt, such that it cannot be reasonably said that, but for the challenged actions of trial counsel, the [trier of fact] would have found the movant not guilty[,] the movant suffers no prejudice." McCoy v. State, 431 S.W.3d 517, 522 (Mo. App. E.D. 2014) (internal quotation omitted). Here, the brother-in-law testified that Appellant drove him around all day gathering items from various locations to make methamphetamine. Additional testimony indicated that Appellant stopped at a farmhouse at which he "fooled with" an anhydrous tank and returned to the vehicle with a jug. Appellant was found in the shed where the methamphetamine was being produced, and he subsequently confessed to manufacturing methamphetamine in the shed. Thus, we cannot say that but for Trial Counsel's failure to call the lab technician to testify, Appellant would not have been found guilty.

Furthermore, it is not enough that counsel's actions "had some conceivable effect on the outcome of the proceedings"; rather, the movant must establish that

the alleged error sufficiently undermines confidence in the trial's outcome. Deck v. State, 68 S.W.3d 418, 426 (Mo. banc 2002) (internal quotation omitted). As previously mentioned, even by Appellant's own calculations, the amount of methamphetamine would have been sufficient for first-degree trafficking charges. And although Appellant alleges that, had the lab technician testified at trial, she would have agreed with him that the lab report's measurements were incorrect, Appellant failed to offer any evidence at the hearing to that effect. Accordingly, Appellant failed to establish that he was prejudiced by Trial Counsel stipulating to the lab report's admission. Point denied.

Respondent's Exhibit J, pp. 6 - 10 (internal footnotes omitted).

The decision of the Missouri Court of Appeals is reasonable and therefore is entitled to deference under § 2254(d). The resolution of Ground 2 by the state court did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2) (as amended April 24, 1996), as defined by the Supreme Court in <u>Williams v. Taylor</u>, 529 U.S. 362, 412 (2000).[2] Applying the <u>Strickland</u> standard of review to the facts as set forth in the record, the Court finds that counsel was not ineffective.

Ground 2 is denied.

## **GROUNDS 1, 3, 4, & 5 – PROCEDURAL DEFAULT**

In Ground 1, petitioner contends that trial counsel was ineffective for failing to investigate the scene of the crime. In Ground 3, petitioner contends that trial counsel was ineffective for

---

[2]According to the concurrence of Justice O'Connor, joined by four other members of the Court, "under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Williams</u>, 529 U.S. at 413, 120 S.Ct. at 1523.

failing to investigate lack of jurisdiction. In Ground 4, petitioner contends that trial counsel was ineffective for failing to call petitioner as a witness at trial and at the suppression hearing. In Ground 5, petitioner contends that trial counsel was ineffective for failing to present evidence and cross examine co-defendants. Respondent contends that Grounds 1, 3, 4, and 5 are procedurally defaulted.

> In <u>Coleman v. Thompson</u>, 501 U.S. 722 (1991), the Supreme Court held:
>
>> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

<u>Id.</u> at 750. Cause, actual prejudice, and the probability of a "fundamental miscarriage of justice" are to be judged under criteria set out in <u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977), and <u>Murray v. Carrier</u>, 477 U.S. 478 (1986). <u>Coleman</u>, 501 U.S. at 748-50.

A review of the record shows that petitioner did not raise Grounds 1, 3, 4, and 5 on appeal from the denial of his amended Rule 29.15 motion. Therefore, Grounds 1, 3, 4, and 5 are procedurally defaulted and may not be reviewed by this Court unless petitioner can demonstrate cause and actual prejudice, or that failure to consider his claims will result in a fundamental miscarriage of justice. <u>Coleman</u>, 501 U.S. at 750. The Court will not reach the "prejudice" component of the analysis unless it first finds that the petitioner has demonstrated "cause" for his procedural default.

Petitioner does not present any valid explanation for why these grounds were not pursued on appeal from the denial of his Rule 29.15 motion and, therefore, has failed to demonstrate

cause for his procedural default.³ As a result, we do not consider prejudice. The Court, however, can still reach the merits of his claims if petitioner can show that he is "probably actually innocent" of the crimes for which he was convicted. Bowman v. Gammon, 85 F.3d 1339, 1346 (8th Cir. 1996), cert. denied, 520 U.S. 1128 (1997). To demonstrate his innocence, petitioner must satisfy a two-part test: First, he must support his allegations of constitutional error "with new reliable evidence. . . that was not presented at trial." Second, he must establish "that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." Id., citing Schlup v. Delo, 513 U.S. 298 (1995). Petitioner fails to make this showing.

Petitioner has failed to show cause for his default of Grounds 1, 3, 4, and 5. He does not show that a manifest injustice will occur if these grounds are not reviewed on the merits, and he has failed to meet the Schlup standard for actual innocence. Id. Therefore, federal review of Grounds 1, 3, 4, and 5 is barred.

Grounds 1, 3, 4, and 5 will be denied.

## CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253(c), the Court may issue a certificate of appealability only "where a petitioner has made a substantial showing of the denial of a constitutional right." To satisfy this standard, a petitioner must show that a "reasonable jurist" would find the district court ruling on the constitutional claim(s) "debatable or wrong." Tennard v. Dretke, 542 U.S. 274, 276 (2004). Because petitioner has not met this standard, a certificate of appealability will be denied. See 28 U.S.C. § 2254, Rule 11(a).

---

³ Petitioner does not allege ineffective assistance of post-conviction relief counsel in his Rule 29.15 proceedings. Consequently, petitioner has waived any claim that such ineffective assistance constitutes cause under the Supreme Court's holding in Martinez v. Ryan, 132 S. Ct. 1309, 1312 (2012).

Accordingly, it is **ORDERED** that:

(1) the petition for writ of habeas corpus is **DENIED**;

(2) this case is **DISMISSED** with prejudice; and

(3) the issuance of a certificate of appealability is **DENIED**.

/s/ Howard F. Sachs
HOWARD F. SACHS
UNITED STATES DISTRICT JUDGE

Kansas City, Missouri,

Dated:  October 27, 2015 .